# EXHIBIT 2

ELIZABETH LOEB
Senior Attorney
Environment & Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7166
Washington, D.C. 20044
(202) 616-8916 (t)
Elizabeth.Loeb@usdoj.gov

STEVEN E. SKROCKI
Office of the U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071

JENNIFER CURRIE
Senior Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
907-269-5280(t)
Jennifer.Currie@alaska.gov

Attorneys for Plaintiffs

UNITED STATES COURT FOR THE
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF ALASKA, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PALMER, ALASKA, <br><br> Defendant. | Civil Action No: 3:16-cv-00204-TMB <br><br> DECLARATION OF MARK KLINGENSTEIN IN SUPPORT OF UNOPPOSED MOTION TO ENTER CONSENT DECREE MODIFICATION |

I, Mark Klingenstein, hereby declare as follows:

1. I am a civil and sanitary engineer with nearly forty years of experience in the environmental field.

Page 1

2. I received a Bachelor of Science in Civil Engineering from Drexel University (Philadelphia, PA) in 1979, and a Master of Engineering in Civil Engineering from the Stevens Institute of Technology (Hoboken, NJ) in 1989. I am a licensed Professional Engineer in the states of New Jersey, Indiana, and Arizona.

3. I am employed as a senior environmental engineer by Leidos (formerly known as SAIC). I also currently support the Environmental Protection Agency (EPA) as a senior environmental engineer under contract to another environmental consulting firm, ERG, Inc.

4. As a senior environmental engineer, I have provided expert technical support to EPA and the United States Department of Justice (DOJ) on Clean Water Act (CWA) enforcement cases for over 30 years. In many of the CWA cases I have been called upon to evaluate the causes and impacts of non-compliance at wastewater treatment plants.

5. On July 21, 2020, I was retained by DOJ to evaluate a request from the City of Palmer to Modify the Consent Decree the Court approved and entered in 2016 in the above case.

6. My work for DOJ on this matter began in 2015. As that time, I was involved in assessing the City's violations of its National Pollution Discharge Elimination System Permit (Permit) and evaluating measures that the City could implement at its wastewater treatment plant (WWTP) to comply with Permit limits.

7. As part of the process leading to the proposed First Material Modification (Modification), I attended numerous telephonic negotiation sessions with the Environmental Protection Agency (EPA), the state of Alaska Department of Environmental Conservation (ADEC), the City and its wastewater treatment consultants. I reviewed numerous technical materials including Palmer's NPDES permit, an EPA summary of Palmer's NPDES permit

Page 2

violations, Palmer's January 30, 2008 Wastewater Treatment Plant Preliminary Engineering Report, the City's 2016 Wastewater Facility Plan Update, the City's July 30, 2015 response to DOJ's request for information and documents, and various other relevant technical documents. I visited and observed the Palmer treatment facility in September 2015 and participated in several conference calls with DOJ, EPA, ADEC and the City.

8. The information provided in this Declaration is based upon my professional experience, my review of the documents described in Paragraph 7 and discussions with City personnel and consultants.

9. Pursuant to the Consent Decree, in 2018 the City installed a Moving Bed Biofilm Reactor (MBBR) System at its WWTP. MMBR is a secondary treatment technology that uses small plastic biofilm carriers (media) suspended in an aeration basin which provide high biomass density to effectuate the biological consumption of pollutants like ammonia.

10. The effluent exiting the MBBR system meets the ammonia limit but is discharged to the lagoons, particularly Lagoon No. 2, where it picks up more ammonia.

11. The exceedances of the Permit's ammonia limits are likely due to an accumulation of solids in the treatment lagoons. Biological solids, including those released by the MBBR system, contain nitrogen, and can release that nitrogen as ammonia as they break down.

12. In 2019 WWTF staff conducted a sludge depth analysis of Lagoon No. 2 recording sludge depths of over 4 feet. In April 2020, the City conducted another sludge depth analysis of Lagoon 2 and determined that while dredging in September-October 2019 had removed a portion of the accumulated solids, a significant amount of solids remained (average of approximately 3-4' sludge depth across the lagoon).

Page 3

13. As the large amount of built-up solids in the lagoons break down, they produce ammonia at a greater rate than the lagoon is nitrifying which results in a net increase of ammonia across the lagoons.

14. The amount of solids on the bottom of the lagoon not only impacts the level of digestion and ammonia release, but creates additional issues that make it more difficult to achieve nitrification in the lagoons.

15. In April-May 2020, the City installed permanent PVC piping along the edge of Lagoon 2 to allow for dredged solids to be pumped to the sludge drying beds located on-site to make dredging more efficient and thus facilitate more complete dredging.

16. The City dredged continuously during the summer of 2020 with the goal of removing as many of the legacy solids as possible in 2020.

17. It also re-configured the baffle in the lagoon to encourage solids to accumulate in the first portion of the lagoon, again to make complete dredging easier.

18. The Modification requires the City to continue dredging pursuant to a Lagoon Dredging and Ammonia Management Plan (which will be attached as Appendix C to the Consent Decree), which I reviewed and provided comments on before it was finalized. This Plan requires the City to commence dredging every spring as soon as possible considering surface ice on the lagoons, and to complete such dredging no later than May 31 of each calendar year. It also requires periodic measurement of sludge depth to determine the effectiveness of the dredging and requires the City to arrange for use of a back-up dredge in the event of a mechanical failure of the City's dredge. The Plan also requires the City to operate the lagoons in accordance with specified operational parameters (such as by increasing dissolved oxygen and

Page 4

maintaining certain alkalinity in summer months) to assure effective nitrification and address any remaining impact by solids.

19. The Modification also requires that no later than September 30, 2020, the City shall implement a Solids Management Plan (to be attached as Appendix B to the Consent Decree) that specifies how the City will monitor, manage, and dispose of onsite solids removed from the lagoon in an appropriate manner. Measures in this plan should assure that solids are contained so that neither the solids nor runoff from solids drying areas travel to the nearby Matanuska River.

20. Finally, the Modification requires the City to carry out jar testing and full-scale testing of whether the addition of a polymer would facilitate more efficient solids capture and management. Polymers are heavy long molecule chains of various substances that aid in coagulation and flocculation of suspended solids. Addition of a polymer will cause the fine solids to agglomerate rapidly into larger, more cohesive flocs that settle quickly.

21. Installing the secondary clarifiers would effectively remove the solids discharged by the MBBR and prevent further contact between the solids and the MBBR effluent and thereby address their ammonia production.

22. I believe that it is possible, although not certain, that the City's exceedances of its Permit's ammonia limits can also be adequately addressed by the measures described in Paragraphs 15 - 20 above and in Paragraph 4 of the proposed Consent Decree Modification.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 11, 2021

By: _____

Page 5